Andrew M. Steinheimer – 200524
Brandon L. Reeves - 242897
ELLIS, LAVOIE POIRIER,
  STEINHEIMER & MCGEE, LLP
555 University Avenue, Suite 200 East
Sacramento, CA  95825
Tel: (916) 283-8820
Fax: (916) 283-8821
asteinheimer@ellislawgrp.com
breeves@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHELE JONES,<br><br>    Plaintiff,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>    Defendant. | Case No.:  3:10-cv-00225-JSW<br><br>**DEFENDANT RASH CURTIS & ASSOCIATES' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 7, 2010<br>Time: 9:00 a.m.<br>Dept.: 11, 19th Floor<br>Judge: Hon. Jeffrey S. White<br><br>Discovery Cutoff:  August 23, 2010<br>Trial: April 11, 2011 |

TABLE OF CONTENTS

PAGE

NOTICE OF MOTION ........................................................................................................1
MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1
I.      INTRODUCTION ....................................................................................................1
II.     STATEMENT OF FACTS .......................................................................................2
III.    PROCEDURAL HISTORY.......................................................................................4
IV.     LEGAL ARGUMENT ..............................................................................................5

        A.      Standard For Summary Judgment And Summary Adjudication........................5

        B.      Plaintiff's federal FDCPA Claims Fail As A Matter Of Law. ...........................6

                1.      Plaintiff's claim for alleged violation of 1692b(1), 1692b(2), 1692c(B)
                        fail as plaintiff has no evidence to support these claims........................6

                2.      Plaintiff has conceded that Rash Curtis did not violate section 1692c(a)(1 .........7

                3.      Plaintiff's claims for alleged violations of sections 1692d and 1692d(5)
                        fail as a matter of law ..........................................................................7

                4.      Plaintiff's claim for violation of § 1692d(6) and 1692e(11) fails as
                        plaintiff admits that she knew who Rash Curtis was and why they were
                        calling...............................................................................................13

                5.      Plaintiff's claim under section 1692e fails as plaintiff has not identified
                        any false, deceptive or misleading representations from Rash Curtis ................14

        C.      Plaintiffs Claims For Violation of The Rosenthal Act Fail As A Matter Of Law ..........14

V.      CONCLUSION ........................................................................................................15

TABLE OF AUTHORITIES

PAGE

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ........................................................6

*Arteaga v. Asset Acceptance, LLC,* 2010 WL 3310259 (E.D. Cal. 2010) ...............................10

*Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 393-394 (D. Del. 1991)..........................13

*Bennett v. Arrow Fin. Servs., Inc.,* 2004 WL 830440 (N.D. Ill. Apr. 15, 2004)..........................9

*Bey v. Daimler Chrysler Servs., L.L.C.,* 2006 WL 361385 (D.N.J. Feb. 15, 2006)...................9

*Bingham v. Collection Bureau, Inc.* (D. N.D. 1981) 505 F.Supp. 864 .......................................9

*Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995) .................................6

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-333 (1986) ............................................................6

*Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176, n.11 (9th Cir. 2006)...............7

*Gorman v. Wolpoff & Abramson, LLP* (N.D. Cal. 2006), 435 F.Supp.2d 1004 .........................2

*Grismore v. United Recovery,* 2006 WL 2246359 (US DC, Ariz) .............................................10

*Jones v. Credit Solutions Corp.* N.D. Cal. Case No. C 10-0218 CRB ......................................12

*Jones v. Arrow Financial Services,* N.D. Cal. Case No. C 10-0216 PJH ..................................12

*Jones v. CBSJ,* N.D. Cal. Case No. C 10-0226 WHA ...............................................................12

*Jones v. Credit Protection Association,* N.D. Cal. Case No. C 10-0217 SC ............................12

*Jones v. LVNV Funding, LLC,* N.D. Cal. Case No. C 10-0219 EMC........................................12

*Jones v. T.A. Ross Collections,* N.D. Cal. Case No. C 10-00227 .............................................12

*Joseph v. J.J. MacIntyre Companies, L.L.C.,* 238 F. Supp. 2d 1158 (N.D. Cal. 2002) ............9

*Krapf v. Nationwide Credit, Inc.,* (C.D. Cal. 2010) 2010 WL 2025323, *4..............................15

*Kuhn v. Account Control Tech., Inc.,* 865 F. Supp. 1443 (D. Nev. 1994) ..................................9

*Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990) ......................................................6

*Pressley v. Capital Credit & Collection Service, Inc.* (Ninth Cir. 1985) 760 F.2d 922 ..........14

*Reed v. Global Acceptance Credit Co.,* (N.D.Cal. Aug 12, 2008) 2008 WL 3330165, *3-5 ...............14

*Saltzman v. I.C. System, Inc.* 2009 WL 3190359, 7 (E.D.Mich.) (E.D.Mich. 2009).............11

*Tucker v. The CBE Group, Inc.* 2010 WL 1849034 (M.D.Fla.) .................................................9

*Udell v. Kansas Counselors, Inc.,* 313 F.Supp.2d 1135, 1143-44 (D.Kan.2004)....................11

**Statutes**

15 U.S.C. § 1692c(a)(1) ...............................................................................................................7

15 U.S.C. § 1692c(B).....................................................................................................................6

15 U.S.C. § 1692c(c).................................................................................................................2, 12

15 U.S.C. § 1692d(1)-(6) .................................................................................................7

15 U.S.C. § 1692d(5) .......................................................................................................7

15 U.S.C. § 1692d(6) .....................................................................................................13

15 U.S.C. § 1692e .........................................................................................................14

15 U.S.C. § 1692e(11) ...................................................................................................13

15 U.S.C. § 1692k(d) .....................................................................................................12

Cal. Civ. Code § 1788.11(b) ..........................................................................................15

Cal. Civ. Code § 1788.11(d) ..........................................................................................15

Cal. Civ. Code § 1788.11(e) ..........................................................................................15

Cal. Civ. Code § 1788.30(f) ...........................................................................................12

**Other Authorities**

Atteberry, FTC Informal Staff Letter (July 18, 1978) .....................................................9

FTC Statements of General Policy or Interpretation Staff Commentary on the FDCPA,
  53 Fed. Reg. 50097, 50105 (Dec. 13, 1988) ..............................................................8

**Rules**

Fed. R. Civ. Proc. § 56(c)................................................................................................6

Fed. R. Civ. Proc. 56(e) ..................................................................................................6

DEFENDANT RASH CURTIS & ASSOCIATES' MOTION FOR SUMMARY JUDGMENT 3:10-cv-00225-JSW

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3     NOTICE IS HEREBY GIVEN that on January 7, 2010, at 9:00 a.m. in Courtroom 11, on the

4  19th Floor of the above-entitled Court located at 450 Golden Gate Ave, San Francisco, CA 94102,

5  defendant Rash Curtis & Associates, will and hereby does move, for summary judgment on plaintiff's

6  entire Second Amended Complaint or, in the alternative, partial summary judgment of each claim

7  within the Second Amended Complaint pursuant to Federal Rules of Civil Procedure Rule 56.

8     The motion is based on the grounds that the undisputed facts demonstrate, as a matter of law,

9  that defendant's collection efforts did not violate the federal or California state Fair Debt Collection

10  Practices Acts with respect to plaintiff.

11     This motion is based on this Notice, the attached Memorandum of Points and Authorities,

12  Plaintiff's Second Amended Complaint, the Declaration of Bob Keith and the exhibits attached thereto,

13  the Declaration of Andrew Steinheimer and the exhibits attached thereto and on such other oral and

14  documentary evidence as may be presented at or before the hearing of this matter.

15  Dated: November 29, 2010

16                              ELLIS, LAVOIE, POIRIER,
                               STEINHEIMER & MCGEE LLP

17

18                          By  s/ *Andrew Steinheimer*
                               Andrew Steinheimer
19                             Attorneys for Defendant
                               Rash Curtis & Associates

20

21

22

**MEMORANDUM OF POINTS AND AUTHORITIES**

23

**I.     INTRODUCTION**

24     Plaintiff Michele Jones has filed at least seven separate federal lawsuits against debt collectors

25  in which she alleges that the debt collectors violated the federal and state Fair Debt Collection

26  Practices Acts by "constantly and continuously" calling her. In some of the lawsuits Jones alleges

27  other additional claims, but the universal allegation is constant and continuous calls.

28     In the instant case, Rash Curtis & Associates ("Rash Curtis") does not deny that it attempted to

-1-

1 | call Jones on many occasions.  However, Rash Curtis only spoke to Ms. Jones on a few occasions and
2 | was calling Jones to try and reach her and resolve the numerous outstanding debts owed by Ms. Jones
3 | to Rash Curtis' creditor clients.  Rash Curtis was not attempting to abuse, harass or oppress Ms. Jones.
4 | Indeed, Ms. Jones never asked Rash Curtis to stop calling her.  Ms. Jones never told Rash Curtis that
5 | the calls were inconvenient or unwelcomed.  By and large Ms. Jones ignored the calls.  She generally
6 | did not answer the calls and did not return any messages left.

7 | The Fair Debt Collection Practices Act was not enacted to prevent a debt collector from calling
8 | a debtor.  *Gorman v. Wolpoff & Abramson, LLP* (N.D. Cal. 2006), 435 F.Supp.2d 1004, 1012 rev'd on
9 | other grounds, 584 F.3d 1147 (9th Cir. 2009), petition for cert filed, No. 09-1142 (U.S. Mar. 15, 2010).
10 | If Ms. Jones refused to pay and wanted Rash Curtis to cease calling, she had the right to instruct Rash
11 | Curtis to stop calling.  15 U.S.C. § 1692c(c).  Ms. Jones never bothered to do so.  Instead, she filed the
12 | instant lawsuit alleging multiple violations of state and federal law.

13 | Rash Curtis hereby moves for summary judgment or, in the alternative, summary adjudication
14 | against Ms. Jones on the grounds that, as a matter of law, Rash Curtis' attempts to reach Ms. Jones did
15 | not violate the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq*. or the California
16 | state Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") California Civil Code § 1788 *et*
17 | *seq*.

18 | The number, pattern and frequency of the calls Rash Curtis made to Ms. Jones does not
19 | constitute harassment, abuse or oppression where Ms. Jones does not complain about the content of the
20 | calls, rarely answered the calls and never instructed Rash Curtis to stop calling.  Further, Ms. Jones
21 | admits that she has no evidence that Rash Curtis ever disclosed information about her debts to any
22 | third parties.  Rash Curtis requests entry of judgment in its favor on the entire operative complaint or,
23 | in the alternative, on each individual statutory claim.

24 |

## II.    STATEMENT OF FACTS

25 | Since 2004, Rash Curtis has been referred 11 separate accounts pertaining to Ms. Jones.  The
26 | latest account was referred on April 2, 2010.  Rash Curtis has been referred the following accounts:
27 | Children's Hospital of Oakland – ER -- $155, assigned August 5, 2004;
28 | A&A Jewelers -- $6326.83, assigned March 18, 2005;

-2-

1  Children's Hospital of Oakland -- $188, assigned January 17, 2008;

2  Doctors Medical Center -- $49.99, assigned March 20, 2008;

3  RCA-Diamond Center -- $641.21, assigned September 26, 2008;

4  Doctors Medical Center -- $49.99, assigned May 23, 2008;

5  Doctors Medical Center -- $2,480, assigned April 20, 2009;

6  Doctors Medical Center -- $100, assigned August 17, 2009;

7  Doctors Medical Center -- $100, assigned December 1, 2009;

8  Cardiovascular Consultants -- $35 Assigned January 30, 2010;

9  Doctors Medical Center -- $173.46, assigned April 2, 2010.

10  *Keith Decl.* ¶ 5.

11  Employees of Rash Curtis have made telephone calls to Ms. Jones in an attempt to contact her

12  and resolve the accounts. With respect to the largest debt, owed to A&A Jewelers, Rash Curtis has

13  obtained a judgment against Ms. Jones and has made attempts to garnish her wages. *Keith Decl.* ¶ 9.

14  When Rash Curtis is referred an account, it sends an initial letter to the debtor informing the

15  debtor that Rash Curtis has been asked to collect the debt and requesting that the debtor contact Rash

16  Curtis. The letter sets forth the disclosures required by 15 U.S.C. § 1692g and 1692e(11). Rash Curtis

17  sent Ms. Jones letters for each account that was referred to Rash Curtis. Ms. Jones did not respond to

18  any of the letters sent in 2008, 2009 or 2010. *Keith Decl.* ¶ 5.

19  According to Ms. Jones, Rash Curtis placed approximately 200 calls to her in 2009. For

20  purposes of this motion, Rash Curtis will accept Ms. Jones' estimation of the number of calls. Rash

21  Curtis placed calls to all of the following numbers in 2009 in an attempt to reach Ms. Jones -- 510-860-

22  0867, 510-235-3359, 510-682-6777, 925-756-7208, 415-724-4534, 510-472-4952, 510-233-0941,

23  510-559-1400. *Keith Decl.* ¶ 11.

24  The 510-860-0867 number is Ms. Jones' cell phone number. *Deposition of Michele Jones*

25  (*Jones Depo.*), p. 9:3-10 (Exhibit D to the Steinheimer Decl.). The 510-235-3359 and 510-682-6777

26  numbers are Ms. Jones' mother's telephone numbers. *Jones Depo.*, p. 10:10-20; 94:5-8. The 925-756-

27  7208 number may have been an old home number for Ms. Jones. *Jones Depo.*, p. 94:9-13. However,

28  she did not use that number in 2009. The 415-724-4534 number may have been a number for an ex-

1   boyfriend of Ms. Jones. *Jones Depo.*, p. 94:14-19. However, Ms. Jones did not use that number in

2   2009. Ms. Jones did not recognize the 510-472-4952 number. *Jones Depo.* p. 95:2-3. The 510-233-

3   0941 was a wrong number and 510-559-1400 was an old work number for plaintiff. *Jones Depo.* p.

4   13:25-14:4; 14:14-16.

5       Ms. Jones never asked Rash Curtis to stop calling her. *Keith Decl.* ¶ 16. Ms. Jones never told

6   Rash Curtis that it was inconvenient to receive telephone calls during working hours. *Jones Depo.* p.

7   37:20-38:8; 50:18-51:2; 60:16-19. Ms. Jones never told Rash Curtis that she found the number of calls

8   she was receiving from Rash Curtis annoying, harassing, abusive or oppressive.

9       Rash Curtis was calling numbers belonging to Ms. Jones in an attempt to contact Ms. Jones.

10  Ms. Jones admits that she used and gave out her mother's number as a contact number for her. *Jones*

11  *Depo.*, p. 10:10-23. Ms. Jones knows that Rash Curtis called her mother attempting to reach Ms.

12  Jones. Ms. Jones is not aware of what, if anything Rash Curtis said to her mother. *Jones Depo.*, p.

13  61:7-19. Ms. Jones does not have any information that indicates Rash Curtis disclosed the existence of

14  any debt to any of the people at her employment. *Jones Depo.* p. 37:17-19; 61:15-19.

15      Indeed, while plaintiff was living with her mother in 2007, Ms. Jones told her mother that Rash

16  Curtis was a debt collector and that Rash Curtis was calling her with respect to money that Ms. Jones

17  owed. *Jones Depo.*, p. 41:6-42:11; 58:12-59:24.

18      Ms. Jones admits that in 2009 she knew who Rash Curtis was and knew when it was Rash

19  Curtis that was calling because she recognized Rash Curtis' telephone numbers when they appeared on

20  her phone. *Jones Depo.*, p. 48:15-49:11.

21      Ms. Jones does not allege any actual damages. She does not claim any emotional distress or

22  damages for inconvenience as a result of the alleged statutory violations. Ms. Jones is simply

23  demanding statutory damages and attorney's fees for bringing this action.

24  ### III.   PROCEDURAL HISTORY

25      On January 15, 2010, Plaintiff filed her initial complaint against Rash Curtis alleging violations

26  of various federal and state debt collection laws. This complaint was verified under penalty of perjury

27  by Ms. Jones on January 6, 2010. One of the allegations in that complaint was that Rash Curtis made a

28  threat to garnish her wages with no intent to do so. Complaint, ¶ 16, 18(k), 18(l) (Exhibit E to the

-4-

1 Steinheimer Decl.). When it was pointed out to plaintiff that Rash Curtis had in fact attempted to
2 garnish Ms. Jones' wages, she dropped this allegation and filed a First Amended Complaint. On June
3 23, 2010, Plaintiff filed her First Amended Complaint (FAC) pursuant to a stipulation with Rash
4 Curtis. (Exhibit F to the Steinheimer Decl.).

5 In the FAC, plaintiff alleged that Rash Curtis placed 3-4 collection calls to Plaintiff every day.
6 FAC ¶ 12. Plaintiff also alleged that Rash Curtis called her before 8:00 a.m. and after 9:00 p.m. FAC
7 ¶ 14. Plaintiff also alleged that Rash Curtis contacted plaintiff at her place of employment despite
8 having knowledge that Plaintiff cannot accept such calls at work. FAC ¶ 15. The FAC was verified
9 under penalty of perjury on June 3, 2010.

10 Following her deposition, in which plaintiff admitted that she never informed Rash Curtis that
11 she could not receive calls at work and during which plaintiff admitted that Rash Curtis did not call her
12 every day and that Rash Curtis did not always call her three to four times, plaintiff filed a Second
13 Amended Complaint (SAC).

14 The SAC is currently the operative complaint. A copy of the SAC is attached as Exhibit G to
15 the Steinheimer Decl.

16 In the SAC, plaintiff alleges that Rash Curtis violated sections 1692(b)(1), 1692b(2),
17 1692c(a)(1), 1692c(B), 1692d, 1692d(5), 1692d(6), 1692e and 1692e(11) of the federal FDCPA. Ms.
18 Jones alleges that Rash Curtis violated sections 1788.11(b), 1788.11(d), 1788.11(e), 1788.12(c) and
19 1788.17 of the California Rosenthal Act.

20 The only factual allegations in the SAC are that (1) Rash Curtis constantly and continuously
21 placed collection calls to Plaintiff seeking and demanding payment for an alleged debt, (2) Rash Curtis
22 placed approximately 200 collection calls to plaintiff in 2009, (3) Rash Curtis contacted plaintiff's
23 mother and disclosed the nature and existence of an alleged consumer debt to her, (4) Rash Curtis
24 failed to identify itself as a debt collector to plaintiff and (5) Rash Curtis placed collection calls to
25 plaintiff from blocked and private telephone numbers. SAC, ¶¶ 11-15.

26 ## IV.   LEGAL ARGUMENT

27 ### A.   Standard For Summary Judgment And Summary Adjudication.

28 Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and

-5-

1  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

2  material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc.

3  § 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-333 (1986); *Anderson v. Liberty Lobby, Inc.,* 477

4  U.S. 242, 255 (1986).) Plaintiffs must offer more than conclusory allegations, unsupported by specific

5  facts, in order to establish a genuine issue of material fact. *Lujan v. National Wildlife Fed'n,* 497 U.S.

6  871, 888 (1990). Plaintiffs may not rely upon the complaint's allegations to defeat the motion. Fed. R.

7  Civ. Proc. 56(e); *Celotex Corp., supra,* 477 U.S. at 322-333; *Brinson v. Linda Rose Joint Venture,* 53

8  F.3d 1044, 1049 (9th Cir. 1995).

9  **B.    Plaintiff's federal FDCPA Claims Fail As A Matter Of Law.**

10
11        **1.    Plaintiff's claim for alleged violation of 1692b(1), 1692b(2), 1692c(B) fail as plaintiff has no evidence to support these claims.**

12  Section 1692b(1) and (2) state:

13
14      Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall – (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and only if expressly requested, identify his employer; (2) not state that such consumer owes any debt.
15

16  15 U.S.C. §§ 1692b(1), 1692b(2).

17      As relevant to this action, section 1692c(B) prohibits a debt collector from communicating, "in

18  connection with the collection of any debt, with any person other than the consumer," except as

19  provided in section 1692b. 15 U.S.C. § 1692c(B),

20      In her SAC, plaintiff alleges that Rash Curtis violated these provisions by contacting plaintiff's

21  mother and disclosing the nature and existence of the alleged consumer debt. SAC, ¶ 13.

22      However, during her deposition, plaintiff was asked what was said or disclosed to her mother.

23  Plaintiff had no information about what Rash Curtis allegedly disclosed to her mother and in fact could

24  not confirm that Rash Curtis told plaintiff's mother anything with respect to any of her debts. *Jones*

25  *Depo.,* p. 61:7-19. Further, Ms. Jones admitted that her mother previously knew about Rash Curtis'

26  attempts to collect a debt from her, because Ms. Jones told her about Rash Curtis back in 2007 when

27  Ms. Jones was living with her mother. *Jones Depo.,* p. 58:12-59:24.

28      Simply put, calling Ms. Jones' mother's telephone number and asking to speak with Michele

1  Jones is not a violation of the FDCPA.

2  **2.   Plaintiff has conceded that Rash Curtis did not violate section 1692c(a)(1).**

3  Section 1692c(a)(1) prohibits a debt collector from contacting plaintiff at an "unusual time or
4  place or a time or place known or which should be known to be inconvenient" and states that the debt
5  collector shall assume that a convenient time for communicating with a consumer is after 8:00 a.m. and
6  before 9:00 p.m. 15 U.S.C. § 1692c(a)(1).

7  Here, following contrary deposition testimony, plaintiff amended her complaint to withdraw
8  the factual allegation that Rash Curtis contacted her before 8:00 a.m. and after 9:00 p.m. *Compare*
9  FAC ¶ 14 (alleging calls before 8:00 a.m. and after 9:00 p.m.) *with* SAC ¶¶ 11-15 (no such allegation).

10  Additionally, plaintiff withdrew the factual allegation that Rash Curtis knew or should have
11  known that it was inconvenient for her to receive calls during work hours, after admitting in her
12  deposition that neither she, nor anyone from her place of employment, ever informed Rash Curtis that
13  calls during work hours were inconvenient. *Compare* FAC ¶ 15 (alleging that defendant contact
14  plaintiff at her place of employment despite having knowledge that Plaintiff cannot accept such calls)
15  with SAC ¶¶ 11-15; *Jones Depo.* p. 59:25-61:6.

16  Thus, plaintiff's current claim for an alleged violation of section 1692c(a)(1) appears to be in
17  error and judgment should be entered against plaintiff on this claim.

18  **3.   Plaintiff's claims for alleged violations of sections 1692d and 1692d(5) fail as a
19  matter of law.**

20  Section 1692d of the FDCPA generally prohibits any conduct that is abusive, harassing and
21  oppressive and then goes on to specify (without limitation) specific conduct that is a violation of
22  1692d.  15 U.S.C. § 1692d(1)-(6).  Section 1692d(5) prohibits a debt collector from "causing a
23  telephone to ring or engaging any person in telephone conversation repeatedly or continuously with
24  *intent* to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5) (emphasis
25  added).

26  Generally, the FDCPA is a strict liability statute.  However, section 1692d(5) is one of the few
27  sections that has an intent requirement.  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d
28  1162, 1176, n.11 (9th Cir. 2006) (identifying §§ 1692d(5), 1692f(3) and 1692c(a)(1) of the FDCPA as

-7-

1   exceptions to strict liability). Thus, it is not enough for a plaintiff to show that she was called

2   "continuously and repeatedly" she must also show that the purpose of the calls was to annoy, abuse or

3   harass her as opposed to simply attempting to reach the plaintiff to discuss the underlying debts. Here,

4   plaintiff admits that she is not aware of any evidence that Rash Curtis made the number of telephone

5   calls it did with the intent to annoy, abuse or harass her. *Jones Depo.*, p. 65:3-7. In contrast, Rash

6   Curtis has presented evidence that there was no intent to annoy, abuse or harass plaintiff and that the

7   calls were made in order to try and reach plaintiff to discuss the numerous debts. *Keith Decl.*, ¶ 13, 18.

8   Further, plaintiff admits that Rash Curtis never simply called and purposefully hung-up on her. *Jones*

9   *Depo.*, p. 64:18-65:2.

10          With this absence of evidence, Ms. Jones cannot meet her burden of demonstrating that Rash

11  Curtis intended to annoy, abuse or harass her with the volume of calls.

12          Plaintiff will likely argue that a large number of calls can amount to abusive, harassing or

13  oppressive conduct under § 1692d without meeting the intent requirement of § 1692d(5). Under the

14  facts presented here, plaintiff is wrong.

15          First, it should be noted that section 1692d(5) includes the term *annoy* while 1692d does not.

16  Mere annoying conduct on its own does not violate 1692d. Instead, to violate 1692d, the conduct must

17  meet the very high standard of abusive, harassing or oppressive conduct. In short, where there is

18  improper intent behind the number of calls, the standard is lower, but absent intent, the standard is very

19  high.

20          While the FDCPA does not define what "repeatedly" or "continuously" mean. There is no

21  express prohibition against calling a debtor every day or even more than once in the same day. In

22  analyzing such claims, courts have looked to the surrounding circumstances to determine whether or

23  not the frequency of the calls violates the act.

24          The Federal Trade Commission, which is the federal agency charged with enforcing the

25  FDCPA, defines "continuously" as "a series of collection calls, one right after another" and defines

26  "repeatedly" as "calling with excessive frequency under the circumstances." FTC Statements of

27  General Policy or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50105 (Dec.

28  13, 1988). The FTC has suggested that six collection calls in one hour is *likely* a violation. Atteberry,

-8-

1  FTC Informal Staff Letter (July 18, 1978).   Case law interpreting the FDCPA has found that
2  immediately calling back if a debtor hangs up on the debt collector after engaging in conversation is
3  *probably* a violation. *Bingham v. Collection Bureau, Inc.* (D. N.D. 1981) 505 F.Supp. 864, 873.

4         Most situations in which courts have found liability either involve a number of calls after the
5  debtor asks not to be called anymore or a high number of calls within a few minutes of each other. *See*
6  *Joseph v. J.J. MacIntyre Companies, L.L.C.*, 238 F. Supp. 2d 1158 (N.D. Cal. 2002) (Court found
7  potential liability where 200 calls were made over 19 months and on some days there were multiple
8  calls made after voice contact in which the Plaintiff requested no further calls be made); *Kuhn v.*
9  *Account Control Tech., Inc.*, 865 F. Supp. 1443 (D. Nev. 1994) (six calls to the debtor at her place of
10  employment within a 24 minute period was a violation).

11         In contrast, where there are simply a high number of calls and no indication that the debtor has
12  asked for the calls to stop or other indicia of harassment, the Courts have generally found no violation.

13         In *Bey v. Daimler Chrysler Servs., L.L.C.*, 2006 WL 361385 (D.N.J. Feb. 15, 2006) summary
14  judgment was granted in favor of defendants where defendant called multiple times in one day without
15  leaving any messages. The Court held that plaintiff must provide evidence such that a reasonable juror
16  could conclude that such calls were caused by defendants with an intent to harass. Absent such
17  evidence, plaintiff's mere allegations of hang-up calls is insufficient to survive summary judgment.

18         In *Tucker v. The CBE Group, Inc.* 2010 WL 1849034 (M.D.Fla.) The Court ruled that 57 calls
19  during the relevant time period was not a violation. The court stated:

20              "While the number of calls made during the relevant time period does
21              seem somewhat high, Defendant only left a total of six messages, made no
               more than seven calls in a single day, and did not call back the same day
22              after leaving a message. The evidence demonstrates that CBE placed each
               of its telephone calls with an intent to reach [plaintiff] rather than an intent
23              to harass Plaintiff."

24         *Id.* Notably, in *Tucker* the debt collector never spoke to the debtor, was never asked to cease
25  calling, and never called back on the same day it had left a message. *Id.*

26         In *Bennett v. Arrow Fin. Servs., Inc.*, 2004 WL 830440 (N.D. Ill. Apr. 15, 2004) the Court held
27  that two *completed* telephone calls, spaced a couple of weeks apart, are hardly intentional harassment.
28  Further, an automated system that could conceivably have placed one call a day which is not recorded

-9-

1    because the person called hung-up before any connection was made, cannot be said to have been

2    created to intentionally harass the person called.

3        In *Grismore v. United Recovery*, 2006 WL 2246359 (US DC, Ariz) the court granted summary

4    judgment in favor of defendant based on three separate discussions with plaintiff and nineteen

5    telephone calls placed to her house from September to December 2, 2004. The court found that

6    defendant placed the calls to resolve the debt, and did not find any evidence of continuous calling with

7    intent to annoy, abuse, or harass.

8        In *Arteaga v. Asset Acceptance, LLC*, 2010 WL 3310259 (E.D. Cal. 2010), the court recently

9    rejected a similar "constant and continuous calling" claim.   The court stated:

> Under the facts of this case, the Court finds that Asset's conduct did not
> rise to the level of harassment under Section 1692d, and fails to raise a
> triable issue of fact as to whether the phone calls were initiated with the
> intent to harass in violation of Section 1692(5). . . . Ms. Arteaga presents
> no evidence that Asset called her immediately after she hung up, called
> multiple times in a single day, called her place of employment, family, or
> friends, called at odd hours, or called after she requested Asset to cease
> calling. Indeed, Ms. Arteaga does not claim that she requested Asset to
> cease calling her, and only recalls the substance of one conversation in
> which Ms. Arteaga initiated the communication with Asset. Ms. Arteaga
> fails to cite a single case in which "daily" or "nearly daily" phone calls
> alone raise an issue of fact as to these claims. Rather, the case law
> supports Asset's position that, even if Ms. Arteaga's allegations are
> believed as true, and considered under the "least sophisticated debtor"
> standard, the conduct does not constitute harassment as a matter of law.
> *See, e.g., Udell v. Kansas Counselors, Inc.,* 313 F.Supp.2d 1135
> (Dist.Kan.2004) (fact that debt collector placed four automated telephone
> calls to consumers over course of seven days without leaving message did
> not, as matter of law, constitute harassment under DCPA). Accordingly,
> this Court grants summary judgment in favor of Asset on Ms. Arteaga's
> Section 1962d and 1962d(5) claims.

*Arteaga, supra*, at *7.

*Saltzman v. I.C. System, Inc.* is also instructive.  In *Saltzman* the court wrote:

> Although Plaintiff alleges that she requested Defendant to stop calling her,
> she did not send Defendant a cease and desist letter, dispute the amount
> owed, or provide evidence that Defendant has acted in a manner that
> would be actionable as harassment, oppression or abuse.  Plaintiff also
> acknowledges receipt of written correspondence from Defendant. At
> Plaintiff's deposition, she testified that she did not answer the vast

majority of Defendant's telephone calls, as she recognized Defendant's telephone number on her caller I.D. Plaintiff further testified that she did not recall Defendant leaving any voice messages for her. The record also indicates a significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with Plaintiff-a ratio of, at best, 1:5. This suggests a "difficulty of reaching Plaintiff, rather than an intent to harass."

Beyond the broad allegations contained in her Complaint, Plaintiff has failed to point to any specific circumstances surrounding these telephone calls that would show any intent, on the part of Defendant, to harass, annoy or abuse. Plaintiff has not pointed to any evidence in the record regarding the amount, frequency, pattern, or content of Defendant's calls that would suggest anything other than a legitimate, albeit persistent, effort to reach her. As the FDCPA does not prohibit such legitimate attempts to contact a debtor, and due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim.

*Saltzman v. I.C. System, Inc.* 2009 WL 3190359, 7 (E.D.Mich.) (E.D.Mich. 2009) (citations omitted.) Notably in *Saltzman*, the defendant placed somewhere between twenty and fifty unsuccessful telephone calls and between two and ten successful telephone calls from approximately November 9, 2008 through December 12, 2008.

As demonstrated by *Saltzman*, courts are hesitant to penalize a debt collector for making telephone calls that go completely unanswered. *Id. accord See Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135, 1143-44 (D.Kan.2004) (A debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages.).

Here, the only issue with respect to Rash Curtis' telephone calls to plaintiff is the number and frequency of the calls. Rash Curtis did not make any threats or leave improper messages. Most of the calls went unanswered. Rash Curtis only spoke with plaintiff on a few occasions and did not make improper threats or use abusive language. Ms. Jones never asked Rash Curtis to stop calling her, never asked that Rash Curtis not call her during work hours and never informed Rash Curtis that the calls were inconvenient or annoying.

1    Ms. Jones claims that Rash Curtis made approximately 200 attempts to contact her in 2009.[1]

2    For purposes of this motion, Rash Curtis will accept plaintiff's estimate. However, these 200 calls

3    were made to many different telephone numbers only of which a couple were actually related to

4    plaintiff in any way. Indeed, the only number that actually reached plaintiff directly was the 510-860-

5    0867 number that was plaintiff's cell phone. The remainder of the calls were to plaintiff's mother,

6    apparent wrong numbers and to plaintiff's place of employment.

7    It is also significant that Rash Curtis was calling Ms. Jones about 11 separate debts, one of

8    which Rash Curtis had obtained a judgment on, and was calling Ms. Jones on behalf of five different

9    creditors. Over the years, Rash Curtis was referred additional debts owed by Ms. Jones. *Keith Decl.* ¶

10   5. Even if Rash Curtis had concluded that Ms. Jones was not going to pay one, or some, of the prior

11   debts, after being referred a new debt, Rash Curtis had the obligation to its clients to attempt to contact

12   Ms. Jones.

13   Further, as alleged in the six other FDCPA actions filed against debt collectors by Ms. Jones on

14   January 15, 2010, during this time, Ms. Jones was receiving "constant and continuous" calls from five

15   or six other debt collectors.[2] Certainly she was receiving a lot of calls. That is not disputed. But a

16   large number of calls does not in itself constitute a violation of the FDCPA.

17   Ms. Jones testified that she sued Rash Curtis because she wanted to stop the calls. *Jones*

18   *Depo.*, p. 104:6-23. This sounds reasonable, until one considers that Ms. Jones nor her attorney's

19   never asked Rash Curtis to stop calling before filing the lawsuit. Under the law, Ms. Jones could have

20   stopped the calls by simply instructing Rash Curtis to stop calling her. 15 U.S.C. § 1692c(c). An

21   entire lawsuit was not necessary.

22   Ms. Jones' own allegations belie her assertion that the conduct was harassing, abusive or

23

24   [1] As plaintiff's complaint was filed on January 15, 2010, the only relevant time period is January 15, 2010 forward as the statute of limitations for FDCPA and Rosenthal Act claims is one-year. 15 U.S.C.

25   § 1692k(d); Cal. Civ. Code § 1788.30(f). Plaintiff appears to concede as much by limiting her allegations regarding the number of telephone calls to 2009. SAC, ¶ 12.

26   [2] See e.g., *Jones v. CBSJ,* N.D. Cal. Case No. C 10-0226 WHA; *Jones v. Credit Solutions Corp.* N.D. Cal. Case No. C 10-0218 CRB; *Jones v. LVNV Funding, LLC*, N.D. Cal. Case No. C 10-0219 EMC;

27   *Jones v. T.A. Ross Collections*, N.D. Cal. Case No. C 10-00227; *Jones v. Arrow Financial Services*, N.D. Cal. Case No. C 10-0216 PJH; *Jones v. Credit Protection Association*, N.D. Cal. Case No. C 10-

28   0217 SC.

-12-

1   oppressive.  She has withdrawn her claims for actual damages for the alleged harassing, abusive or

2   oppressive behavior and now merely requests statutory damages and, of course, attorney's fees for

3   bringing the claims.  *Compare* Complaint, ¶ 21, 28 (requesting award of "Actual Damages") with

4   SAC, ¶¶ 17-19, 22-24 (claim for Actual Damages omitted).

5       Courts have long recognized that debt collection naturally causes some embarrassment and

6   annoyance.  *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 393-394 (D. Del. 1991).  Even a high

7   volume of calls should not be deemed a violation of the FDCPA without something more, such as

8   threats or abuse within the calls or clear instruction or request from the consumer to have the calls

9   cease.

10      **4.      Plaintiff's claim for violation of § 1692d(6) and 1692e(11) fails as plaintiff admits**

11              **that she knew who Rash Curtis was and why they were calling.**

12      Section 1692d(6) prohibits the placement of telephone calls without the meaningful disclosure

13  of the caller's identity.  15 U.S.C. § 1692d(6).  Section 1692e(11) requires that, in the initial written

14  communication with the debtor, the debt collector must inform the debtor that the communication is an

15  attempt to collect a debt and that any information will be sued for that purpose.  Further, section

16  1692e(11) requires that in subsequent communications, the debt collector must inform the debtor that

17  the communication is from a debt collector.  15 U.S.C. § 1692e(11).  Here, plaintiff alleges in her SAC

18  that Defendant failed to identify itself as a debt collector to plaintiff and that defendant placed

19  collection calls from blocked or private telephone numbers.  SAC, ¶ 14-15.

20      First, defendant does not place calls from blocked or private numbers.  *Keith Decl.,* ¶ 19.

21  Further, even if it did, this would not be a violation of section 1692d(6).  Section 1692d(6) is designed

22  to prevent a debt collector from fooling plaintiff into believing he or she is communicating with

23  someone else.  Blocking the caller id on its telephone numbers would not be a violation.

24      But plaintiff's own testimony proves disproves this claim.  Plaintiff testified that she knew it

25  was Rash Curtis calling when she received calls on her cell phone.  *Jones Depo.*, p. p. 48:15-49:11.

26  Plaintiff testified that she either programmed her phone to display "Rash Curtis" or "don't answer"

27  when the call was from Rash Curtis' telephone number.  *Jones Depo.*, p. 48:15-49:11.  Plaintiff did not

28  testify anything about Rash Curtis blocking its number or being fooled into answering a call from Rash

-13-

1   Curtis that she did not want to answer.

2       Further, plaintiff admits that by 2009, after at least two-years of calls from Rash Curtis and
3   Rash Curtis having sued her and obtained a judgment against her, she knew very well who Rash Curtis
4   was. *Jones Depo.*, p. 67:13-68:2.

5       Rash Curtis is not required to keep informing plaintiff that it is a debt collector when plaintiff
6   knows exactly who they are. See, e.g., *Pressley v. Capital Credit & Collection Service, Inc.* (Ninth
7   Cir. 1985) 760 F.2d 922, 926; *Reed v. Global Acceptance Credit Co.,* (N.D.Cal. Aug 12, 2008) 2008
8   WL 3330165, \*3-5. Although *Pressley* was interpreting an earlier version of the statute, the rationale
9   remains the same. There is no purpose in requiring Rash Curtis to say that it is a debt collector when
10  plaintiff undeniably knows that Rash Curtis is a debt collector.

11      Further, plaintiff cannot identify any specific instance in which she allegedly received a
12  message from Rash Curtis in which Rash Curtis failed to identify itself. *Jones Depo.*, p. 69:14-23.

13          **5.    Plaintiff's claim under section 1692e fails as plaintiff has not identified any false,
14                  deceptive or misleading representations from Rash Curtis.**

15      Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading
16  representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Here,
17  plaintiff has not identified any false, deceptive or misleading representation or action by Rash Curtis.
18  When asked during her deposition if she was aware of any false, deceptive or misleading
19  representation by Rash Curtis, plaintiff responded "Not that I know of." *Jones Depo.*, p. 68:3-9.
20  Plaintiff then indicated that the only thing she could think of was that she had thought that Rash Curtis
21  may be a lawyer's office because Rash Curtis was garnishing her wages. *Jones Depo.*, p. 68:17-69:5.
22  However, Jones admitted that this was only her mistake and that Rash Curtis never told her that they
23  were lawyers. *Jones Depo.*, p. 69:6-12.

24  **C.    Plaintiffs Claims For Violation of The Rosenthal Act Fail As A Matter Of Law.**

25      Plaintiff's claims under the Rosenthal Act are virtually identical to the claims under the federal
26  FDCPA and fail for all of the same reasons.

27      Plaintiff's claim under Civil Code § 1788.17 is directly contingent on proving a violation of the
28  federal FDCPA. Plaintiff cannot prove any such violation and therefore this claim fails as a matter of

1   law.

2       Section 1788.11(b) prohibits a debt collector from "placing telephone calls without disclosure
3   of the caller's identity. Cal. Civ. Proc. § 1788.11(b) As discussed above with respect to FDCPA
4   section 1692d(6) and 1692e(11), plaintiff was aware of who Rash Curtis was and has failed to identify
5   any specific instance in which Rash Curtis placed a telephone call to plaintiff without disclosing its
6   identity.

7       Section 1788.11(d) prohibits "causing a telephone to ring repeatedly or continuously to annoy
8   the person called. Cal. Civ. Code § 1788.11(d). Plaintiff has admitted that Rash Curtis did not cause
9   her telephone to ring repeatedly with the intent to annoy her. *Jones Depo.*, p. 64:18-65:7.

10       Section 1788.11(e) prohibits "communicating, by telephone or in person, with the debtor with
11   such frequency as to be unreasonable and to constitute an harassment to the debtor under the
12   circumstances." Cal. Civ. Code § 1788.11(e). This claim fails as Rash Curtis did not communicate
13   with plaintiff with unreasonable frequency. "Communicating" for purposes of the section of the
14   Rosenthal Act requires actual contact between the debt collector and the debtor. *Krapf v. Nationwide*
15   *Credit, Inc.*, (C.D. Cal. 2010) 2010 WL 2025323, *4. Here, most of the calls to plaintiff's cell phone
16   went unanswered. According to plaintiff she only spoke with someone from Rash Curtis ten times in
17   2009. The remainder of the calls were not to numbers which plaintiff would answer. And the number
18   of calls must be considered in the context that this is with respect to 11 different debts for 5 different
19   creditors. In short, it cannot be said that Rash Curtis "communicated" with plaintiff with "such
20   frequency as to be unreasonable and to constitute an harassment."

21       Section 1788.12(c) prohibits "communicating to any person any list of debtors which discloses
22   the nature or existence of a consumer debt, commonly known as 'deadbeat lists', or advertising any
23   consumer debt for sale, by naming the debtor." There is no evidence or even allegation that Rash
24   Curtis put plaintiff's name on a deadbeat list or tried to sell one of plaintiff's debts. This allegation is
25   completely without merit.

26                       **V.   CONCLUSION**

27       For all of the forgoing reasons, defendant Rash Curtis respectfully requests that this Court grant
28   its motion for summary judgment and enter judgment in favor of Rash Curtis on plaintiff's entire

Second Amended Complaint.  In the alternative, Rash Curtis requests that this Court enter partial

summary judgment on each individual statutory claim under the FDCPA and California Rosenthal Act.

Dated: November 29, 2010

ELLIS, LAVOIE, POIRIER, STEINHEIMER
& MCGEE, LLP


By  _/s/ Andrew Steinheimer_
    Andrew Steinheimer
    Attorney for Defendant
    RASH CURTIS & ASSOCIATES

1

**CERTIFICATE OF SERVICE**

2       I, Jennifer E. Mueller, declare:

3       I am a citizen of the United States, am over the age of eighteen years, and am not a party to or

4   interested in the within entitled cause.  My business address is 555 University Avenue, Suite 200 East,

5   Sacramento, CA 95825.

6       On November 29, 2010, I served the following document(s) on the parties in the within action:

7   **DEFENDANT RASH CURTIS & ASSOCIATES' MOTION FOR SUMMARY JUDGMENT
    OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

8

| | | |
|---|---|---|
| 9<br>10 | **X** | **VIA ELECTRONIC SERVICE:**  The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service, to the following: |
| 11<br>12 | | **BY MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Sacramento, CA on this date, addressed as follows: |
| 13<br>14 | | **BY HAND:**  The above-described document(s) will be placed in a sealed envelope which will be hand-delivered on this same date by _____, addressed as follows: |
| 15<br>16 | | **VIA FACSIMILE:**  The above-described document(s) was transmitted via facsimile from the fax number shown on the attached facsimile report, at the time shown on the attached facsimile report, and the attached facsimile report reported no error in transmission and was properly issued from the transmitting facsimile machine, and a copy of same was mailed, on this same date to the following: |
| 17 | | **VIA OVERNIGHT SERVICE:**  The above-described document(s) will be delivered by overnight service, to the following: |

18   Ryan Lee                                          Attorneys for
19   Krohn & Moss, Ltd.                                Plaintiff Michele Jones
     10474 Santa Monica Boulevard
20   Suite 401
     Los Angeles, CA 90025

21

22       I declare under penalty of perjury under the laws of the State of California that the foregoing is

23   a true and correct statement and that this Certificate was executed on November 29, 2010.

24

25                                  By: _____
                                        Jennifer E. Mueller
26

27

28

DEFENDANT RASH CURTIS & ASSOCIATES' MOTION FOR SUMMARY JUDGMENT 3:10-cv-00225-JSW