Andrew M. Steinheimer – 200524
Brandon L. Reeves - 242897
ELLIS, LAVOIE POIRIER,
   STEINHEIMER & MCGEE, LLP
555 University Avenue, Suite 200 East
Sacramento, CA  95825
Tel: (916) 283-8820
Fax: (916) 283-8821
asteinheimer@ellislawgrp.com
breeves@ellislawgrp.com

Attorneys for Defendant RASH CURTIS & ASSOCIATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHELE JONES,<br><br>       Plaintiff,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>       Defendant. | Case No.:  3:10-cv-00225-JSW<br><br>**DECLARATION OF ANDREW M. STEINHEIMER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 7, 2011<br>Time: 9:00 a.m.<br>Dept.: 11, 19th Floor<br>Judge: Hon. Jeffrey S. White<br><br>Discovery Cutoff:  August 23, 2010<br>Trial: April 11, 2011 |

I, Andrew Steinheimer, declare that:

1.       I am an attorney duly licensed to practice in all of the courts in the State of California and I am a partner with the law firm of Ellis, LaVoie, Poirier, Steinheimer & McGee, LLP, attorneys of record for Defendant RASH CURTIS & ASSOCIATES.  I am the attorney that is primarily responsible for the handling of this case and I have personal knowledge of the facts contained in this declaration and can and will testify competently as to facts set forth herein if called upon to do so.

2.       Attached hereto as Exhibit D are true and correct copies of excerpts from plaintiff Michele Jones' Deposition, taken on June 29, 2010.

3.       Attached hereto as Exhibit E is a true and correct copy of plaintiff's original complaint

- 1 -

1 || filed in this action.

2 ||     4.     Attached hereto as Exhibit F is a true and correct copy of plaintiff's First Amended

3 || Complaint filed in this action.

4 ||     5.     Attached hereto as Exhibit G is a true and correct copy of plaintiff Second Amended

5 || Complaint filed in this action. The Second Amended Complaint is the operative complaint at this time.

6 ||     I declare under penalty of perjury under the laws of the State of California that the foregoing is

7 || true and correct and that this Declaration was executed on November 29, 2010.

8

9                         /s/ Andrew M. Steinheimer
                        Andrew M. Steinheimer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

1

**CERTIFICATE OF SERVICE**

2

I, Jennifer E. Mueller, declare:

3

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or

4

interested in the within entitled cause. My business address is 555 University Avenue, Suite 200 East,

5

Sacramento, CA 95825.

6

On November 29, 2010, I served the following document(s) on the parties in the within action:

7

**DECLARATION OF ANDREW M. STEINHEIMER IN SUPPORT OF DEFENDANT'S**

8

**MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| 9 / 10 | **X** | **VIA ELECTRONIC SERVICE:** The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service, to the following: |
| 11 / 12 | | **BY MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Sacramento, CA on this date, addressed as follows: |
| 13 / 14 | | **BY HAND:** The above-described document(s) will be placed in a sealed envelope which will be hand-delivered on this same date by _____, addressed as follows: |
| 15 / 16 | | **VIA FACSIMILE:** The above-described document(s) was transmitted via facsimile from the fax number shown on the attached facsimile report, at the time shown on the attached facsimile report, and the attached facsimile report reported no error in transmission and was properly issued from the transmitting facsimile machine, and a copy of same was mailed, on this same date to the following: |
| 17 | | **VIA OVERNIGHT SERVICE:** The above-described document(s) will be delivered by overnight service, to the following: |

18

19

20

21

| | |
|---|---|
| Ryan Lee<br>Krohn & Moss, Ltd.<br>10474 Santa Monica Boulevard<br>Suite 401<br>Los Angeles, CA 90025 | Attorneys for Plaintiff<br>Michele Jones |

22

23

I declare under penalty of perjury under the laws of the State of California that the foregoing is

a true and correct statement and that this Certificate was executed on November 29, 2010.

24

25

By: _____

Jennifer E. Mueller

26

27

28

DECLARATION OF ANDREW M. STEINHEIMER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---o0o---

MICHELE JONES,

    Plaintiff,

vs.                         No.  10-CV-00225-JSW

RASH CURTIS & ASSOCIATES,

    Defendants.

_____/

DEPOSITION OF MICHELE JONES

Taken Before KATHERINE J. KIRBY, CMR, CRR

CSR NO. 6418

June 29, 2010

1    about telephone numbers.

2         A.   Okay.

3         Q.   What's your current telephone number?

4         A.   (510) 860-0867.

5         Q.   Is that a cell phone or --

6         A.   Cell phone.

7         Q.   What service is your cell phone with?

8         A.   Metro PCS.

9         Q.   How long have you used that cell phone number?

10        A.   At least five years.

11        Q.   During the past five years, say, going back to

12   2006, have you had any other cell phones?

13        A.   I have had various numbers, not in the last

14   five years I don't believe.  I could be mistaken

15   though, but I don't remember the phone numbers.

16        Q.   Were they also with Metro PCS?

17        A.   Yes, they've always been with Metro.  But prior

18   to that they've been like Sprint and T Mobile.  But

19   it's typically mainly Metro PCS that I can remember.

20        Q.   Do you have a home phone as well?

21        A.   We have a home phone now but it's in my

22   husband's name.

23        Q.   Is that just having that since February 2010?

24        A.   Yes.

25        Q.   What's the home phone number?

1    A.    It's (510)964-4658.

2    Q.    What is your carrier for the home phone?

3    A.    That is Comcast.

4    Q.    Prior to this home telephone number at the

5    Sunny View address, did you have a home phone at the

6    Powell Street address?

7    A.    Cell phone.

8    Q.    Just your cell phone?

9    A.    Um-hum.

10    Q.    Then when you lived at your mother's on 21st

11    Street in Richmond, did you have a home telephone

12    number?

13    A.    Her phone number.   Hers is (510)235-3359.

14    Q.    While you were living there, did you use that

15    as your home phone as well?

16    A.    Yes.

17    Q.    So you would give that number out to friends,

18    family to contact you?

19    A.    Yes, but they mainly called me on my cell

20    phone.

21    Q.    Did your work contact you, have that number for

22    you?

23    A.    Yes.

24    Q.    Are you currently employed?

25    A.    No.

1      A.   On record it goes to 12th grade because they're

2   high school drop-outs, but their skill level is between

3   9 and 10 and actual credit level was between 9 and 12

4   but we say 12th grade.   That's how they're put in the

5   system.

6      Q.   Who is your principal or supervisor?

7      A.   My immediately supervisor's name is RJ Guess.

8      Q.   Can you spell Guess for me?

9      A.   Sure.   G-u-e-s-s.   I have his number.

10     Q.   Okay.

11     A.   It's (831)706-8700.   That's his immediate phone

12   number, not John Muir Charter School.   If you want to

13   reach him, that's who I usually called.

14     Q.   Do you know a number for John Muir Charter

15   School?

16     A.   Not off the top of my head I don't because I

17   mainly called him.

18     Q.   Was he the principal or what was his position?

19     A.   He was an administrator.   If you want a

20   technical term, you can call him a principal.   But he

21   was the administrator for all the school sites in

22   California because they service like the Conservation

23   Corps, Job Corps, Youth Bills, California Conservation

24   Corps.

25     Q.   What was your employment immediately before the

1    John Muir Charter School?

2           A.   Sylvan Learning Center.

3           Q.   How long did you work there?

4           A.   From May 15, 2007 to August 15, 2008.

5           Q.   Which site did you work at?

6           A.   El Cerrito Center.

7           Q.   Who is the owner or the supervisor there?

8           A.   My supervisor was Levy Blankenship but he is no

9    longer there.  However, there is a new director.  His

10   name is Evan Bass and I did work with him.  At the time

11   he was the director of education as well.

12          Q.   That's a tutoring center?

13          A.   Yes.

14          Q.   Do you know a telephone number for a Sylvan

15   Learning Center?

16          A.   Yes, (510)559-1400.

17          Q.   How large is that in terms of how many

18   employees or teachers that are employed?

19          A.   I can only give it at the time I was there.  At

20   the time I was there we had about 25 teachers that were

21   part-time; not all of them were regularly scheduled.  I

22   would say maybe about 10 to 15 that were regularly

23   scheduled.

24               We had three pullers, which are the ones that

25   prepare the floor for instruction; two directors of

1     A.   Yes.

2          Q.   But they also called your work number?

3     A.   Yes.

4          Q.   You told me already about the calls to John

5     Muir.

6     A.   Yes.

7          Q.   Those were the ones that had been taken down by

8     Ms. Phyllis or LaToya?

9     A.   Yes.

10         Q.   You say the messages, you don't know what they

11    said to either Phyllis or LaToya; the message you

12    received would just say call from Rash Curtis?

13    A.   Yes.   They also called at Adams Middle School

14    when I worked at West Contra Costa Unified.  That's the

15    other one.  I would just again just receive a slip of

16    paper saying it was Rash Curtis & Associates.

17         Q.   Did you ever talk to Ms. Phyllis or LaToya

18    about what Rash Curtis said to them?

19         A.   No.

20         Q.   Did you ever tell Rash Curtis not to call you

21    at work?

22         A.   I don't believe so.

23         Q.   You never wrote them a letter, send them a fax

24    saying please don't call at work?

25         A.   When they denied me calling on my own to try to

1    set up payment arrangements with them for what I could

2    afford, I ceased communications with them.

3           And then they said they would garnish my wages,

4    so I said what was the point of me contacting them,

5    they're getting their payment so I left it alone.

6        Q.    After that point you wouldn't answer their

7    calls and you wouldn't call them back; correct?

8        A.    Correct.

9        Q.    When was that date?

10       A.    No, let me change that.  That wasn't always

11   true.  There were times actually I did speak with them

12   again trying to make payment arrangements but they

13   would always say no.

14          I couldn't give you an exact date because it's

15   been various times.  I'd have to look at my folder.

16       Q.    What would be in the folder that would help you

17   refresh your recollection?

18       A.    In the folder I have letters from Rash Curtis,

19   I have letters I have written to them.  And then I have

20   who I spoke with, date and time.  Basically a little

21   bit of what I said.

22       Q.    So you have some other notes about telephone

23   calls?

24       A.    Not the telephone calls.  It was in regards to

25   trying to pay off the debt.  I didn't talk to them

1    take any kind of payment that I give.  If I'm laid off,

2    then I can only afford this amount of money.

3           So they did use a scare tactic.  Not every one

4    of them did.  This particular one was a very nasty

5    person.

6           Q.   This is before the 2007 lawsuit you're talking

7    about?

8           A.   I believe so because she mentioned that they

9    called numerous times that they tried to work with me

10   at this point, that I need to pay the full amount, when

11   can I pay it.

12          This was -- I was off two years on temporary

13   disability and with my settlement I was paying off my

14   bills.  That's the reason why I have the folder.  I was

15   trying to give them -- I was trying to pay the small

16   bills where I could pay them off completely so my

17   credit score would be better.

18          And then I was trying to give Rash Curtis &

19   Associates some money or some monthly payment that I

20   could afford while paying my other bills or paying them

21   off.  That's how this came about.  We got into an

22   argument over the phone.

23          My mom was there because I was living with my

24   mom at the time.  At that point I just said forget it.

25   They had told me that they were going to go ahead

1    then -- I'm going to take it as you're refusing to pay
2    your debt and we will proceed with wage garnishments.
3    That's what they told me.
4         Q.   When you say your mother was there, could she
5    hear the conversation?
6         A.   Yes, she could hear the conversation.
7         Q.   Was it on speakerphone?
8         A.   No, she could hear me speaking.   Then when I
9    was done, I told her like what had happened?   She was
10   there telling me -- she was mouthing to me, Write down
11   who you spoke to, write down the time and the date.
12        Q.   Did you write that down?
13        A.   Yes.
14        Q.   Do you have that in a sheet somewhere?
15        A.   That's the one that's in my folder.   And I
16   wrote them a letter I believe to follow up.   I wrote
17   them a letter before -- I let them know the situation I
18   was in.   I can't remember if I wrote them a letter
19   following up that phone conversation or not but I know
20   I have some letters to them.
21        Q.   You said that they've talked to your mom.
22             What has your mom told you about those
23   conversations?
24        A.   She told me that they were calling for me
25   because she asked me, Why are they calling for you on

1    of thing?

2        A.  Yeah.

3        Q.  So you'd hang up and they'd call back thinking

4    they got disconnected or something?

5        A.  Yeah, or my child would pick up the phone.

6    They either thought that they were playing on the phone

7    or something.  And then I realized that they had my

8    phone, hang it up if someone was on it and then they'd

9    call back.

10        Q.  This happened with Rash Curtis or this happened

11    with all sorts of different creditors?

12        A.  This happened with Rash Curtis, too, but it can

13    happen with any of the other debt collectors or

14    anything.

15        Q.  When you're talking about three or four calls a

16    day --

17        A.  That's Rash Curtis.

18        Q.  How do you know it was always Rash Curtis

19    calling?

20        A.  Because I put in my phone -- let me see if I

21    still have it.  I had put in my phone -- they were one

22    of my "don't answer" because they would call so much.

23        Q.  You have a setting in your phone that says

24    "don't answer"?

25        A.  I lock their number into my phone, and I either

1   put "Rash Curtis" or I put "don't answer" because I

2   knew it was them because I memorized their numbers.

3          Actually, yeah, I have their number programmed

4   in my phone and I would know it was them calling.  I

5   don't have the 415 but I have the 707 because they're

6   the ones that called the most so I would definitely

7   know.

8          This I didn't just put in because I have my

9   numbers.  They have the ability to download your

10  information from one phone to another so I've had that

11  in my phone for a while.

12     Q.  We talked about the fact that if they did leave

13  you a message, they would leave you one message per

14  day.

15         If you talked with them, actually would they

16  continue to call you back on the same day if you talked

17  to them?

18     A.  Yeah, they would, because there's two different

19  numbers.  I assume -- I'm sorry, I didn't mean to cut

20  you off.

21     Q.  Do you remember a specific instance of them

22  calling you back on a day where you've already spoken

23  with them?

24     A.  I can't say anything to that right now because

25  it's been so long ago.

1      Q.   During -- take the year 2009.  Can you give me

2  an estimate of how many times you received a call from

3  Rash Curtis during that year?

4      A.   That's a hard estimate to give.  I would same

5  at least 200 times.

6      Q.   Out of those 200 calls, how many times did you

7  actually speak with somebody in the year 2009?

8      A.   Maybe at the most ten.

9      Q.   Then out of the 200 calls, how many times did

10  they leave a message?

11      A.   I would say maybe about -- I have to estimate.

12  Maybe about 70 percent of the time maybe, because in

13  the beginning they'd do it a lot but they started to

14  taper off.

15      Q.   So 70 percent of the time you think they left

16  you 140 messages?

17      A.   It's possible but I'm not sure.

18      Q.   I asked you with respect to John Muir if you

19  have ever told them not to call you at work or call

20  them back at work or please don't call me here anymore

21  and you said no?

22      A.   No, I didn't.

23      Q.   Is the same true for the other jobs?

24      A.   Yes.

25      Q.   You never told them I can't get calls at work,

1    please stop calling me at work?

2          A.  No.

3          Q.  Do you know if anybody from your work like

4    Phyllis or LaToya ever said, Don't call here anymore?

5          A.  Ms. Toya, because we call her Ms. Toya, told me

6    that they're not supposed to be calling.

7          Q.  She told you that?

8          A.  Yes.

9          Q.  But you don't know if she told them that?

10         A.  I don't know if she told them that, but I know

11   that she told me that they're not supposed to be.

12         Q.  You talked about one telephone call that you

13   believed was kind of harassing or something.  She was

14   saying are you aware of this and that, I'm going to put

15   a lien on your property or something like that.

16         Other than that one telephone conversation that

17   you say happened before the first lawsuit back in

18   2007 --

19         A.  (Witness nods head).

20         Q.  Is that a "yes"?

21         A.  I have to check the exact date but I believe

22   it's before the lawsuit, yeah.

23         Q.  Was there any other telephone call that you

24   have with Rash Curtis that stands out in your memory?

25         A.  Not all of them were like that.  Not all of

1       Q.   Subsection B or Paragraph B says that they

2    violated the FDCPA by contacting a third party and

3    saying that you owed a debt.

4       A.   Yes.   That would also be again to my mother.

5       Q.   When I was asking you earlier about what was

6    said to your mother, you never told me that your mother

7    was saying that they told her that you owed a debt.

8       A.   That is the gist that I got from what she said

9    but that's something -- like I said, she gave me the

10   main points.   Anything that was little in between that

11   was said I don't know.

12      Q.   Have you talked to your mother about your

13   credit issues?

14      A.   I haven't talked to her about my credit issues.

15   She knows about Rash Curtis, mainly like I said at that

16   time when I had that conversation with that

17   representative, that wasn't a good conversation so she

18   was there when I had that.

19           She was the one who advised me to communicate

20   with them via letter and to write down date and time

21   things like that.   She knows about that because she

22   also knows because they've been calling her.

23           She doesn't necessarily know about my other

24   bills because I don't put her in that business.   I

25   didn't mean for her to actually get into this business

1    except they were calling her.

2        Q.    And calling you when you lived with her?

3        A.    Yes.

4        Q.    When you were talking about that first

5    conversation that she heard your half of?

6        A.    Right.

7        Q.    So after that conversation when you were

8    talking in front of her, she was aware that Rash Curtis

9    was calling to try and collect a bill from you?

10       A.    I believe so, yeah.

11       Q.    As far as you know, the way she found out that

12   Rash Curtis was trying to collect a bill was from you

13   as opposed to from Rash Curtis directly?

14       A.    First instance, yeah.  But again, she didn't

15   expect them to call her or when I left -- of course

16   they're going to call the phone because that's the one

17   I was using at the time.  But she didn't expect them to

18   grill her on questions, I guess is what I'm trying to

19   say.

20       Q.    Where you are and what your telephone number

21   is?

22       A.    I know they do that but anything extra I don't

23   know.  That would be her saying that.  I don't know.

24   You'd have to ask her about that.

25       Q.    Subsection C says, "Contacting Plaintiff at

1     time and place known to be inconvenient."

2           What are you referring to?

3           A.  During work hours at my job, contacting my job

4     because when I'm teaching I'm not supposed to be on the

5     phone basically.

6           When you work for a school or school district,

7     you have the school site and then you have downtown.

8     Whether they talked to payroll or not, I don't know.

9     Payroll I don't think would tell them because they have

10    access to that information.  But the school site of

11    course does.

12          During times before 8, which it wasn't a lot

13    but there was times before 8 and one or two times after

14    9.  That's what I referred to there.  But mainly during

15    teaching times.

16          Q.  Again, just to confirm, neither you nor anybody

17    at the school never told them not to call you at

18    school?

19          A.  I don't know if they said anything.

20     . Q.  That's the same thing with Paragraph D, "By

21    contacting Plaintiff at her place of employment despite

22    having knowledge that Plaintiff cannot accept such

23    calls"?

24          A.  Yes.

25          Q.  That's just because you were at school?

1    A.  At my job.  If I understand, I learned that

2    they're not supposed to call you at your job.

3    Q.  As far as you know do you have any knowledge

4    that anybody has ever told Rash Curtis that?

5    A.  Not that I know of.  I don't know because I

6    wasn't the one that spoke with them.

7    Q.  Paragraph E is by communicating with someone

8    other than plaintiff concerning the alleged debt.

9    A.  That would be my mother.

10   Q.  But again, you don't know if they ever talked

11   to her about the debt?

12   A.  I don't know.

13   Q.  Just asked questions about you?

14   A.  Yeah, I don't know.

15   Q.  No one else other than your mother?

16   A.  Not that I can think of.  I know some bill

17   collectors will ask you for reference or something like

18   that.  I don't know if they called anyone else.  I

19   can't recall that.

20   Q.  Paragraph F is, "Engaging in conduct the

21   natural consequence of which is to harass, oppress and

22   abuse Plaintiff."

23       What conduct do you believe was harassing,

24   oppressive and abusive?

25   A.  The first conversation I had with that

1    annoy, abuse or harass the plaintiff."

2            Is that just the number of calls you received?

3        A.   Yeah, that's mainly what it is and calling my

4    job.  It's really annoying and harassment to me that if

5    you can't reach the person at the job, you call the

6    cell phone right after.  If I'm not picking up, there's

7    a reason why I'm not picking up.  I'm at work.

8        Q.   When you're talking about calling making a

9    telephone ring repeatedly, it's to call your job which

10   couldn't get to you and then call your cell phone?

11       A.   Yeah, because my students, they would kind of

12   laugh at me because I'd look down and say, Why are you

13   calling me?

14           They were like, Then don't pick up.

15           But then they keep calling me.

16           Don't they know you're in class?

17           I was like, Yeah, well, so...

18       Q.   But you're not talking about a situation where

19   they would call, hang up, call, hang up, call, hang up

20   all in a row?

21       A.   Not all in a row.  There were times --

22       Q.   Maybe two or three times a day?

23       A.   Yeah, they would call or, like I said, it would

24   be on my answering where I'd pick up.  I'd check on the

25   messages and the phone would be hung up or something

1　like that. But they wouldn't intentionally call and

2　hang up, no.

3　　　　Q. Do you have any evidence or knowledge that

4　somebody at Rash Curtis was actually trying to annoy

5　you versus actually trying to get ahold of you?

6　　　　A. No. I have no evidence of that outside of the

7　numerous phone calls a day, no.

8　　　　Q. Paragraph I says that they violated the FDCPA

9　by placing telephone calls without disclosing their

10　identity.

11　　　　What do you mean by that?

12　　　　A. They're like the prerecorded messages who they

13　are and what they're calling for.

14　　　　Now I understand the sticky situation because

15　if you leave a message, then you can't leave personal

16　information on the message, I understand that. But I'd

17　like to know who they are and leaving the message with

18　me because sometimes they'll say this is a business

19　matter or they'll say the name and then can you please

20　call us back at such and such and such. I don't know

21　what that's about.

22　　　　Q. Is that generally you wouldn't know but you did

23　know because you knew who Rash Curtis was?

24　　　　A. I didn't know it was then. As you can see, I

25　have a lot of debts I hold. I didn't know who it is.

1          But in 2009 between like I said December 2008

2     and about April, May 2009, I was getting a lot of phone

3     calls during that time.  I didn't quite understand why

4     for those amounts being smaller and I didn't know

5     because I have three different ones, I didn't know

6     which account it was because there's three different

7     ones.

8          But it was always 707, 415.  And I think the

9     third number is 866.  It was always those.

10     Q.   Can you give me any specific date on which you

11     received one of those messages?

12     A.   No, I can't give you a specific date.

13     Q.   In 2009 you were well aware of who Rash Curtis

14     was by that time?

15     A.   Yeah, because it was in my phone.

16     Q.   So when you received the message, you weren't

17     confused by who it was from?

18     A.   It depended if it was automated or if it was a

19     person.  If it was a person, they would -- most of the

20     time they would say who they were but not all the time.

21     So it depended, especially when they kept calling back.

22     Q.   I guess my question though is not where they're

23     saying who they are but at this point in time you knew

24     who they were?

25     A.   Oh, yes.

1    Q.   Because you had the number in your phone?

2    A.   Yes, I knew who they were, very aware.

3    Q.   J, "False, deceptive or misleading

4    representations in connection with the debt

5    collection."

6         Are you aware of anybody from Rash Curtis

7    making any false, deceptive or misleading statements or

8    representations to you?

9    A.   Not that I know of.

10   Q.   So this being in the complaint is inaccurate?

11   A.   Yeah.   That's why I was asking -- I don't know,

12   in its entirety, know what this particular one means.

13        Does this mean like posing as someone else when

14   they're calling.

15   Q.   It's your allegation.   I'm just trying to get

16   your understanding of it.

17        As you sit here today, you're not aware of any

18   false, deceptive or misleading representations from

19   Rash Curtis?

20   A.   No.   It was always to collect a debt.   Hold on

21   one second.   The only one I would say would be -- I'll

22   put it like this:   I'm aware Rash Curtis Associates is

23   a collection agency.   But if there was any deception,

24   it was almost like posing like a lawyer's office.

25        When I was dealing with them, that's who I

1    thought I was dealing with because I've had a wage

2    garnishment from an actual lawyer's office. That's the

3    only kind of deception I would say that was there but

4    that was my understanding, that's who I thought they

5    were.

6         Q.   You just heard the name Rash Curtis and thought

7    it was a lawyer?

8         A.   Yeah. So when they were stating that about the

9    wage garnishments and things like that, that's why I

10   was scared because I was like okay, I'm dealing with a

11   lawyer, I gotta get me a lawyer kind of thing.

12        Q.   But they never told you they were lawyers?

13        A.   No, they never said anything like that.

14        Q.   The last one, K, says by failing to state that

15   a communication is from a debt collector.

16        A.   That would go back to I. Sometimes when they

17   would call, that's not what they were, you know.

18        Q.   They would just say it's a business matter, you

19   need to call us back?

20        A.   Yeah.

21        Q.   Again, you can't tell me any specific date that

22   that happened?

23        A.   No. I'd have to go back and look. Like I

24   said, Metro may have where you can kind of go back and

25   check. Police are usually ones that can do that

1    since I think around May 2007.

2           Q.   Let me ask you about a couple of telephone

3    numbers.  I apologize if these are ones that you've

4    told me about.

5                Do you recognize the number (510)682-6777?

6           A.   That's my mom's cell phone.

7           Q.   That's your mom's cell phone?

8           A.   Yes.

9           Q.   How about (925)756-7208?

10          A.   That might be a phone number I had when I lived

11   in Antioch.

12          Q.   You can't be sure?

13          A.   I can't remember.

14          Q.   How about (415)724-4534?

15          A.   That was an ex's number.

16          Q.   Ex-boyfriend?

17          A.   Yes -- no, no, wait.  Can I see Exhibit 1?

18          Q.   What ex was that?

19          A.   Elias Pereira.

20          Q.   How do you spell that?

21          A.   E-l-i-a-s, P-e-r-e-i-r-a.

22          Q.   Do you know his address?

23          A.   He's a transient, but his home address is

24   supposed to be 953 Shotwell, San Francisco 94110.

25          Q.   Would that number be his cell phone?

1       A.   It's not available anymore.

2       Q.   How about (510)472-4952?

3       A.   That number doesn't ring a bell.

4           MR. STEINHEIMER:   This will be marked as

5    Exhibit 5.

6           (Defendants' Exhibit No. 5 marked for

7           identification.)

8    BY MR. STEINHEIMER:

9       Q.   Ms. Jones, this is your original complaint that

10   was filed against Rash Curtis.  Can you take a look at

11   that for a moment.

12           Did you review this complaint before it was

13   filed?

14       A.   This is the original; right?

15       Q.   Yes.

16       A.   I did, but we had to change it.

17       Q.   Turn to the last page, Page 7.  Is that your

18   signature?

19       A.   That is my signature.

20       Q.   You signed this on January 6th of 2010?

21       A.   Yes.

22       Q.   At that time did you believe everything was

23   accurate?

24       A.   I did, but then we went through it again.

25   Yeah, we went through it again.

1   A. I believe at least one of them was placed in

2 the preceding month, November. But that was like

3 around seven-something in the morning. They very

4 rarely called that early, but they wanted to catch me

5 because I wouldn't answer the phone.

6   Q. Mr. Steinheimer asked you questions about what

7 you wanted to get out of this case. Correct me if I'm

8 wrong, but your response is essentially that you were

9 attempting to take care of the debt and you merely just

10 wanted the calls of harassment to stop.

11   Is that an accurate statement?

12   A. That's an accurate statement. In all honestly,

13 because I'm going to be very frank, you guys get paid

14 more than I do so it's not a matter of trying to get a

15 whole bunch of money out of people because the money

16 has to go to bills anyway, I'm not going to see it.

17   But I know since I'm laid off and I have to

18 reduce payment to them, I'm going to be hearing it from

19 them again so I'm expecting the same activity to happen

20 again and then to call my mom again, and I don't want

21 that to happen. It's not necessary.

22   I know that I owe a debt. I don't need them to

23 keep calling.

24   Q. You've made attempts to work this out with Rash

25 Curtis specifically in trying to arrange for payment;





Ryan Lee, Esq. (SBN 235879)
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025
T: (323) 988-2400; F: (866) 583-3695 -filing
rlee@consumerlawcenter.com
Attorneys for Plaintiff,
MICHELE JONES

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MICHELE JONES,

    Plaintiff,

    v.

RASH CURTIS & ASSOCIATES,

    Defendant.

Case No.: **10 025**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

(Unlawful Debt Collection Practices)

**VERIFIED COMPLAINT**

MICHELE JONES (Plaintiff), by her attorneys, KROHN & MOSS, LTD., alleges the following against RASH CURTIS & ASSOCIATES, (Defendant):

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, *15 U.S.C. 1692 et seq.* (FDCPA).

2. Count II of the Plaintiff's Complaint is based on Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788 et seq.* (RFDCPA).

**JURISDICTION AND VENUE**

3. Jurisdiction of this court arises pursuant to *15 U.S.C. 1692k(d)*, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and *28 U.S.C. 1367* grants this court supplemental jurisdiction over the state claims contained therein.

- 1 -

4. Defendant conducts business in the state of California, and therefore, personal jurisdiction is established.

5. Venue is proper pursuant to *28 U.S.C. 1391(b)(1)*.

6. Declaratory relief is available pursuant to *28 U.S.C. 2201 and 2202*.

## PARTIES

7. Plaintiff is a natural person residing in San Pablo, California.

8. Plaintiff is a consumer as that term is defined by *15 U.S.C. 1692a(3)*, and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by *15 U.S.C. 1692a(5)* and *Cal. Civ. Code § 1788.2(h)*.

9. Defendant is a debt collector as that term is defined by *15 U.S.C. 1692a(6)* and *Cal. Civ. Code §1788.2(c)*, and sought to collect a consumer debt from Plaintiff.

10. Defendant is a national company with its headquarters in Vacaville, California.

11. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12. Defendant constantly and continuously placed collection calls to Plaintiff seeking and demanding payment for an alleged debt.

13. Defendant places between 3-4 collection calls to Plaintiff every day.

14. Defendant contacted a third party, Plaintiff's mother, and disclosed the nature and existence of the alleged consumer debt.

15. Defendant placed collection calls to Plaintiff before 8:00 am and after 9:00 pm.

16. Defendant used abusive language. Specifically, Defendant stated "if you can't pay this debt today then we are going to go through the process again and garnish your wages." To date, no wages have been garnished.

-2-

17. Defendant contacted Plaintiff at her place of employment despite having knowledge that Plaintiff cannot accept such calls.

COUNT I

**DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT**

18. Defendant violated the FDCPA based on the following:

    a. Defendant violated *§1692b(1)* of the FDCPA by contacting a third party and failing to state that collector is correcting or confirming location information.

    b. Defendant violated *§1692b(2)* of the FDCPA by contacting a third party and stating Plaintiff owes a debt.

    c. Defendant violated *§1692c(a)(1)* of the FDCPA by contacting Plaintiff at a time and place known to be inconvenient.

    d. Defendant violated *§1692c(a)(3)* of the FDCPA by contacting Plaintiff at her place of employment despite having knowledge that Plaintiff cannot accept such calls.

    e. Defendant violated *§1692c(B)* of the FDCPA by communicating with someone other than Plaintiff concerning the alleged debt.

    f. Defendant violated *§1692d* of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Plaintiff.

    g. Defendant violated *§1692d(2)* of the FDCPA by using abusive language in an attempt to collect the alleged debt.

    h. Defendant violated *§1692d(5)* of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.

    i. Defendant violated *§1692d(6)* of the FDCPA by placing telephone calls without disclosing his/her identity.

    j. Defendant violated *§1692e* of the FDCPA by making false, deceptive, and misleading representations in connection with debt collection.

- 3 -

PLAINTIFF'S COMPLAINT

k.  Defendant violated *§1692e(4)* of the FDCPA by misrepresenting that the
    nonpayment of the alleged debt will result in garnishment.

l.  Defendant violated *§1692e(5)* of the FDCPA by threatening to take action that
    cannot legally be taken or is not intended to be taken.

m. Defendant violated *§1692e(10)* of the FDCPA by making false representations
    and engaging in deceptive means to collect a debt.

n.  Defendant violated *§1692e(11)* of the FDCPA by failing to state that the
    communication is from a debt collector.

WHEREFORE, Plaintiff, MICHELE JONES, respectfully requests judgment be entered
against Defendant, RASH CURTIS & ASSOCIATES, for the following:

19. Declaratory judgment that Defendant's conduct violated the Fair Debt Collection
    Practices Act,

20. Statutory damages of $1000.00 pursuant to the Fair Debt Collection Practices Act *15*
    *U.S.C. 1692k*,

21. Actual damages,

22. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act,
    *15 U.S.C. 1692k*

23. Any other relief that this Honorable Court deems appropriate.

## COUNT II
### DEFENDANT VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

24. Plaintiff repeats and realleges all of the allegations in Count I of Plaintiff's Complaint as
    the allegations in Count II of Plaintiff's Complaint.

25. Defendant violated the RFDCPA based on the following:

a.  Defendant violated *§1788.10(e)* of the RFDCPA by threatening that the
    nonpayment of the alleged debt will result in garnishment.

-4-

b. Defendant violated *§1788.11(b)* of the RFDCPA by placing telephone calls without disclosing the caller's identity.

c. Defendant violated *§1788.11(d)* of the RFDCPA by causing Plaintiff's telephone to ring repeatedly and continuously so as to annoy Plaintiff.

d. Defendant violated *§1788.11(e)* of the RFDCPA by placing collection calls to Plaintiff with such frequency that was unreasonable and constituted harassment.

e. Defendant violated *§1788.12(c)* of the RFDCPA by communicating to a third party the nature and existence of the alleged consumer debt.

f. Defendant violated *§1788.13(j)* of the RFDCPA by making the false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made.

g. Defendant violated the *§1788.17* of the RFDCPA by continuously failing to comply with the statutory regulations contained within the FDCPA, *15 U.S.C. § 1692 et seq.*

WHEREFORE, Plaintiff, MICHELE JONES, respectfully requests judgment be entered against Defendant, RASH CURTIS & ASSOCIATES, for the following:

26. Declaratory judgment that Defendant's conduct violated the Rosenthal Fair Debt Collection Practices Act,

27. Statutory damages of $1000.00 pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788.30(b)*,

28. Actual damages,

29. Costs and reasonable attorneys' fees pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ Code § 1788.30(c)*, and

30. Any other relief that this Honorable Court deems appropriate.

- 5 -

1

2                            ## DEMAND FOR JURY TRIAL

3        PLEASE TAKE NOTICE that Plaintiff, MICHELE JONES, demands a jury trial in this

4   case.

5                                        RESPECTFULLY SUBMITTED,

6

7        Dated: January 12, 2010            By:
                                            Ryan Lee, Esq.
8                                           KROHN & MOSS, LTD.
                                            Attorneys for Plaintiff,
9                                           MICHELE JONES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                      - 6 -

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF CALIFORNIA

    Plaintiff, MICHELE JONES, states as follows:

1.    I am the Plaintiff in this civil proceeding.
2.    I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.    I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.
4.    I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.    I have filed this Complaint in good faith and solely for the purposes set forth in it.
6.    Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.    Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

    Pursuant to 28 U.S.C. § 1746(2), I, MICHELE JONES, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

DATE: _1 / 6 / 2010_              _Michele Jones_
                                    MICHELE JONES

- 7 -



Ryan Lee, Esq. (SBN 235879)
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025
T: (323) 988-2400; F: (866) 583-3695
rlee@consumerlawcenter.com
Attorneys for Plaintiff,
MICHELE JONES

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE JONES, | Case No.: **10-cv-0225** |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| RASH CURTIS & ASSOCIATES, | **(Unlawful Debt Collection Practices)** |
| Defendant. | |

## VERIFIED COMPLAINT

MICHELE JONES (Plaintiff), by her attorneys, KROHN & MOSS, LTD., alleges the following against RASH CURTIS & ASSOCIATES, (Defendant):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, *15 U.S.C. 1692 et seq.* (FDCPA).

2. Count II of the Plaintiff's Complaint is based on Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788 et seq.* (RFDCPA).

## JURISDICTION AND VENUE

3. Jurisdiction of this court arises pursuant to *15 U.S.C. 1692k(d)*, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and *28 U.S.C. 1367* grants this court supplemental jurisdiction over the state claims contained therein.

4. Defendant conducts business in the state of California, and therefore, personal jurisdiction is established.

5. Venue is proper pursuant to *28 U.S.C. 1391(b)(1)*.

## PARTIES

6. Plaintiff is a natural person residing in San Pablo, California.

7. Plaintiff is a consumer as that term is defined by *15 U.S.C. 1692a(3)*, and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by *15 U.S.C. 1692a(5)* and *Cal. Civ. Code § 1788.2(h)*.

8. Defendant is a debt collector as that term is defined by *15 U.S.C. 1692a(6)* and *Cal. Civ. Code §1788.2(c)*, and sought to collect a consumer debt from Plaintiff.

9. Defendant is a national company with its headquarters in Vacaville, California.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. Defendant constantly and continuously placed collection calls to Plaintiff seeking and demanding payment for an alleged debt.

12. Defendant places between 3-4 collection calls to Plaintiff every day.

13. Defendant contacted a third party, Plaintiff's mother, and disclosed the nature and existence of the alleged consumer debt.

14. Defendant placed collection calls to Plaintiff before 8:00 am and after 9:00 pm.

15. Defendant contacted Plaintiff at her place of employment despite having knowledge that Plaintiff cannot accept such calls.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

16. Defendant violated the FDCPA based on the following:

-2-

a. Defendant violated *§1692b(1)* of the FDCPA by contacting a third party and failing to state that collector is correcting or confirming location information.

b. Defendant violated *§1692b(2)* of the FDCPA by contacting a third party and stating Plaintiff owes a debt.

c. Defendant violated *§1692c(a)(1)* of the FDCPA by contacting Plaintiff at a time and place known to be inconvenient.

d. Defendant violated *§1692c(a)(3)* of the FDCPA by contacting Plaintiff at her place of employment despite having knowledge that Plaintiff cannot accept such calls.

e. Defendant violated *§1692c(B)* of the FDCPA by communicating with someone other than Plaintiff concerning the alleged debt.

f. Defendant violated *§1692d* of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Plaintiff.

g. Defendant violated *§1692d(2)* of the FDCPA by using abusive language in an attempt to collect the alleged debt.

h. Defendant violated *§1692d(5)* of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.

i. Defendant violated *§1692d(6)* of the FDCPA by placing telephone calls without disclosing his/her identity.

j. Defendant violated *§1692e* of the FDCPA by making false, deceptive, and misleading representations in connection with debt collection.

k. Defendant violated *§1692e(11)* of the FDCPA by failing to state that the communication is from a debt collector.

WHEREFORE, Plaintiff, MICHELE JONES, respectfully requests judgment be entered against Defendant, RASH CURTIS & ASSOCIATES, for the following:

- 3 -

17. Statutory damages of $1000.00  pursuant to the Fair Debt Collection Practices Act, *15 U.S.C. 1692k,*

18. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, *15 U.S.C. 1692k*

19. Any other relief that this Honorable Court deems appropriate.

## COUNT II
### DEFENDANT VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

20. Plaintiff repeats and realleges all of the allegations in Count I of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

21. Defendant violated the RFDCPA based on the following:

   a. Defendant violated *§1788.11(b)* of the RFDCPA by placing telephone calls without disclosing the caller's identity.

   b. Defendant violated *§1788.11(d)* of the RFDCPA by causing Plaintiff's telephone to ring repeatedly and continuously so as to annoy Plaintiff.

   c. Defendant violated *§1788.11(e)* of the RFDCPA by placing collection calls to Plaintiff with such frequency that was unreasonable and constituted harassment.

   d. Defendant violated *§1788.12(c)* of the RFDCPA by communicating to a third party the nature and existence of the alleged consumer debt.

   e. Defendant violated the *§1788.17* of the RFDCPA by continuously failing to comply with the statutory regulations contained within the FDCPA, *15 U.S.C. § 1692 et seq*.

WHEREFORE, Plaintiff, MICHELE JONES, respectfully requests judgment be entered against Defendant, RASH CURTIS & ASSOCIATES, for the following:

22. Statutory damages of $1000.00  pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788.30(b)*,

- 4 -

23. Costs and reasonable attorneys' fees pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ Code § 1788.30(c)*, and

24. Any other relief that this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, MICHELE JONES, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

Dated:    June 23, 2010    By:   /s/ Ryan Lee
                                  Ryan Lee, Esq.
                                  KROHN & MOSS, LTD.
                                  Attorneys for Plaintiff,
                                  MICHELE JONES

- 5 -

PLAINTIFF'S COMPLAINT

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF CALIFORNIA

Plaintiff, MICHELE JONES, states as follows:

1.  I am the Plaintiff in this civil proceeding.
2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.
4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.  I have filed this Complaint in good faith and solely for the purposes set forth in it.

Pursuant to 28 U.S.C. § 1746(2), I, MICHELE JONES, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

DATE: 6/13/10 _____     _____
                                    MICHELE JONES

- 6 -

PLAINTIFF'S COMPLAINT



Ryan Lee, Esq. (SBN 235879)
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025
T: (323) 988-2400; F: (866) 861-1390
rlee@consumerlawcenter.com
Attorneys for Plaintiff,
MICHELE JONES

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE JONES,<br><br>        Plaintiff,<br><br>v.<br><br>RASH CURTIS & ASSOCIATES,<br><br>        Defendant. | Case No.: 3:10-cv-00225-JSW<br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

## VERIFIED COMPLAINT

MICHELE JONES (Plaintiff), by her attorneys, KROHN & MOSS, LTD., alleges the following against RASH CURTIS & ASSOCIATES, (Defendant):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, *15 U.S.C. 1692 et seq.* (FDCPA).

2. Count II of the Plaintiff's Complaint is based on Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788 et seq.* (RFDCPA).

### JURISDICTION AND VENUE

3. Jurisdiction of this court arises pursuant to *15 U.S.C. 1692k(d)*, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and *28 U.S.C. 1367* grants this court supplemental jurisdiction over the state claims contained therein.

4. Defendant conducts business in the state of California, and therefore, personal jurisdiction is established.

5. Venue is proper pursuant to *28 U.S.C. 1391(b)(1)*.

## PARTIES

6. Plaintiff is a natural person residing in San Pablo, California.

7. Plaintiff is a consumer as that term is defined by *15 U.S.C. 1692a(3)*, and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by *15 U.S.C. 1692a(5)* and *Cal. Civ. Code § 1788.2(h)*.

8. Defendant is a debt collector as that term is defined by *15 U.S.C. 1692a(6)* and *Cal. Civ. Code §1788.2(c)*, and sought to collect a consumer debt from Plaintiff.

9. Defendant is a national company with its headquarters in Vacaville, California.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. Defendant constantly and continuously placed collection calls to Plaintiff seeking and demanding payment for an alleged debt.

12. Defendant placed approximately two-hundred (200) collection calls to Plaintiff in the year 2009.

13. Defendant contacted a third party, Plaintiff's mother, and disclosed the nature and existence of the alleged consumer debt.

14. Defendant failed to identify itself as a debt collector to Plaintiff.

15. Defendant placed collection calls to Plaintiff from blocked and private telephone numbers.

-2-

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

16. Defendant violated the FDCPA based on the following:

    a.  Defendant violated *§1692b(1)* of the FDCPA by contacting a third party and failing to state that collector is correcting or confirming location information.

    b.  Defendant violated *§1692b(2)* of the FDCPA by contacting a third party and stating Plaintiff owes a debt.

    c.  Defendant violated *§1692c(a)(1)* of the FDCPA by contacting Plaintiff at a time and place known to be inconvenient.

    d.  Defendant violated *§1692c(B)* of the FDCPA by communicating with someone other than Plaintiff concerning the alleged debt.

    e.  Defendant violated *§1692d* of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Plaintiff.

    f.  Defendant violated *§1692d(5)* of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.

    g.  Defendant violated *§1692d(6)* of the FDCPA by placing telephone calls without disclosing his/her identity.

    h.  Defendant violated *§1692e* of the FDCPA by making false, deceptive, and misleading representations in connection with debt collection.

    i.  Defendant violated *§1692e(11)* of the FDCPA by failing to state that the communication is from a debt collector.

WHEREFORE, Plaintiff, MICHELE JONES, respectfully requests judgment be entered against Defendant, RASH CURTIS & ASSOCIATES, for the following:

17. Statutory damages of $1000.00 pursuant to the Fair Debt Collection Practices Act, *15 U.S.C. 1692k,*

-3-

18. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, *15 U.S.C. 1692k*

19. Any other relief that this Honorable Court deems appropriate.

## COUNT II
### DEFENDANT VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

20. Plaintiff repeats and realleges all of the allegations in Count I of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

21. Defendant violated the RFDCPA based on the following:

  a. Defendant violated *§1788.11(b)* of the RFDCPA by placing telephone calls without disclosing the caller's identity.

  b. Defendant violated *§1788.11(d)* of the RFDCPA by causing Plaintiff's telephone to ring repeatedly and continuously so as to annoy Plaintiff.

  c. Defendant violated *§1788.11(e)* of the RFDCPA by placing collection calls to Plaintiff with such frequency that was unreasonable and constituted harassment.

  d. Defendant violated *§1788.12(c)* of the RFDCPA by communicating to a third party the nature and existence of the alleged consumer debt.

  e. Defendant violated the *§1788.17* of the RFDCPA by continuously failing to comply with the statutory regulations contained within the FDCPA, *15 U.S.C. § 1692 et seq.*

WHEREFORE, Plaintiff, MICHELE JONES, respectfully requests judgment be entered against Defendant, RASH CURTIS & ASSOCIATES, for the following:

22. Statutory damages of $1000.00 pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code §1788.30(b)*,

23. Costs and reasonable attorneys' fees pursuant to the Rosenthal Fair Debt Collection Practices Act, *Cal. Civ Code § 1788.30(c)*, and

- 4 -

24. Any other relief that this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, MICHELE JONES, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

Dated: August 27, 2010

By:___/s/ Ryan Lee_____
Ryan Lee, Esq.
KROHN & MOSS, LTD.
Attorneys for Plaintiff,
MICHELE JONES

- 5 -

PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, MICHELE JONES Case3:10-cv-00225-JSW Document37 Filed08/27/10 Page6 of 7

1.   I am the Plaintiff in this civil proceeding.

2.   I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.   I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.

4.   I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5.   I have filed this Complaint in good faith and solely for the purposes set forth in it.

Pursuant to 28 U.S.C. § 1746(2), I, MICHELE JONES, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

DATE: 7/25/10

MICHELE JONES

- 6 -

PLAINTIFF'S COMPLAINT

Case3:10-cv-00325-JSW Document43 Filed11/29/10 Page52 of 52

1

## CERTIFICATE OF SERVICE

2

I, Ryan Lee, hereby certify that a copy of the foregoing **1)PLAINTIFF'S SECOND AMENDED COMPLAINT** was sent via the COURT'S CM/ECF SYSTEM to:

3

4

**Brandon L. Reeves**
**Andrew M. Steinheimer**
ELLIS, LaVOIE, POIRIER, STEINHEIMER, & McGEE, LLP
555 Univeristy Avenue, Suite 200 East
Sacramento, CA 95825
breeves@ellislawgrp.com
asteinheimer@ellislawgrp.com

5

6

7

8

9

Dated: August 27, 2010

10

/s/ Ryan Lee
Ryan Lee
Krohn & Moss, Ltd.
10474 Santa Monica Blvd. Suite 401
Los Angeles, CA 90025
T: (323) 988-2400; F: (866) 583-3695
rlee@consumerlawcenter.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 7 -

PLAINTIFF'S SECOND AMENDED COMPLAINT